UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IRA TENENZAPF

                                Case No.: _____

                 **Plaintiff,**

       **-against-**

**DANIELS NORELLI SCULLY & CECERE, P.C.**
**JAMES P. SCULLY**
**COLORADO CAPITAL INVESTMENTS, INC.**
**COLORADO CAPITAL ASSET MANAGEMENT CORPORATION**

                **Defendants.**
-------------------------------------------------------------------X

## ORIGINAL COMPLAINT

Plaintiff Ira Tenenzapf brings suit against Defendant debt collectors for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, N.Y. Gen. Bus. Law § 349 *et seq* and for conversion, and in support would show as follows.

This suit regards, *inter alia*, Defendants' attempts to execute upon and otherwise collect on a sewer judgment for a debt that had previously been paid; doing so without providing a notice of assignment or conducting a meaningful attorney review; and then continuing got execute upon the judgment – not once, but twice -- *after* the court vacated the same.

## A. JURISDICTION AND VENUE

1.     The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law

claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Kings County, New York.

## B.      PARTIES

3.      Plaintiff IRA TENENZAPF ("Mr. Tenenzapf") is an individual currently residing in Kings County, New York.

4.      Defendant DANIELS NORELLI SCULLY & CECERE, P.C. ("DN") is a domestic corporation, organized under the laws of the State of New York. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York. DN is a law firm engaged in the business of collecting putative consumer debts by, on behalf of putative creditors or debt buyers, filing thousands of collection lawsuits, serving thousands of income executions, information subpoenas, and bank restraints; by making thousands of collection phone calls; and by sending out thousands of collection letters. DN is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6).

5.      Defendant JAMES P. SCULLY ("Scully") is an individual who on information and belief resides in the state of New York.  Scully is a named partner at DN, regularly engages in business in New York through DN, and this suit arose out of said Scully's business in New York. Scully regularly has his named affixed (purportedly signed) to many of the thousands of debt collection lawsuits, income executions, information subpoenas, and bank restraints issued by DN to collect on putative debts.

6.     Defendant COLORADO CAPITAL ASSET MANAGEMENT CORP. ("CCAM") is a domestic corporation, organized under the laws of the State of New York. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

7.     Defendant COLORADO CAPITAL INVESTMENTS, INC. ("CCI") is a foreign corporation, organized under the laws of the State of Texas. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

8.     Defendant CACH, LLC is a foreign corporation, organized under the laws of the State of Colorado. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

## C.  STATEMENT OF FACTS

9.     On or about August 30, 2001,[1] COLORADO CAPITAL INVESTMENTS, INC. ("CCI"), through its collection law firm Golden Wexler, filed a verified complaint against Mr. Tenenzapf in Kings County Civil Court, captioned Colorado Capital Investments, Inc. *v. Ira Tenenzapf*, Index No. 077250-01/KI ("the collection lawsuit"). *See* Exhibit A. [2]

10.    CCI alleged in the collection lawsuit that Mr. Tenenzapf had defaulted with an account Citibank, that the account was assigned to CCI, and that the principal amount due was $12,578.87.

11.    Mr. Tenenzapf had a Citibank account at one point but had paid the account in full. Thus, CCI was collecting on a debt not owed.

12.    CCI used the process serving company Accu-Serve to purportedly serve Mr. Tenenzapf.

---

1 August 30, 2011 is date by the signature on the summons and verified complaint. However, Ecourts, the official court website lists a filing date of December 26, 2001. The copy of the summons and complaint DN attached to the opposition the order to show cause to vacate the sewer service default judgment does not contain a court file stamp. It is thus unclear as to actual filing date was in August or in December, 2001.

2 All exhibits annexed to this complaint are incorporated by reference in their entirety.

However, Accu-Serve did not actually serve Mr. Tenenzapf.  Instead Accu-Serve executed a false affidavit of service dated December 15, 2001. *See* Exhibit B.

13.     On or about April 17, 2002, CCI, through DN, used the false affidavit to obtain a default judgment against Mr. Tenenzapf in the collections lawsuit for $13,692.57, which included pre-judgment interest and $115 in court costs. Using a false affidavit of service to obtain a default judgment is commonly known as "sewer service."

14.     As CCI entered the default judgment by sewer service, any attempts by it or a subsequent assignee to restrain a bank account constitutes conversion from the outset.

15.     Mr. Tenenzapf was never served, personally or otherwise, never received a copy of the lawsuit in the mail, and indeed had no notice of the collection lawsuit or the subsequent judgment until thirteen years later when DANIELS NORELLI SCULLY & CECERE, P.C. ("DN") issued a bank restraint.

16.     At some point CCI apparently substituted DN as counsel.  However, apparently DN did not file a notice of substitution with the court.  Certainly, Mr. Tenenzapf never received, and, on information and belief, was never sent, a notice of substitution of counsel.

17.     On or about July 9, 2015, DN, through its attorney James Scully, signed a Restraining Notice and Information Subpoena (the "bank restraint") in the index number that CCI sued and entered a sewer service default judgment against Mr. Tenenzapf. However, the plaintiff listed in the caption of bank restraint was not CCI but Colorado Capital Asset Management, Corp. ("CCAM"). *See* Exhibit C.

18.     CCI assigned the putative default judgment to CCAM according to an affirmation DN filed several months later, in an October 7, 2015 affirmation in opposition to Mr. Tenenzapf's Order to Show Cause to cease further collections and vacate the default judgment.  Other than

the affirmation, there is no evidence that CCI in fact ever assigned the judgment to CCAM.

19.     Mr. Tenenzapf never received and, on information and belief, was never sent a notice of assignment of the putative judgment. Absent receipt of such a notice, CCAM, Scully, and DN had no legal right to attempt to collect the putative judgment against Mr. Tenenzapf.  Also, the failure to provide notice of the assignment of the putative judgment made it more difficult to challenge further collections on the putative judgment. Had Mr. Tenenzapf been provided the notice of assignment of judgment, as required by law, he may have been able to check the ecourt system, find the putative default judgment, and moved by way of Order to Show Cause to vacate the default judgment. As the party or putative in the debt collection lawsuit, CCI and CCAM are directly liable for the FDCPA and other violations they commit in the collection lawsuit and in any prior attempts to execute on the putative judgment.

20.     In the July 9, 2015 bank restraint, CCAM, through Scully and DN, falsely stated that that CCAM was the plaintiff in the collection number in that index number, and that CCAM had obtained a judgment against Mr. Tenenzapf. According to the court file, suit was filed in the name of CCI and judgment was rendered in the name of CCI.

21.     By misidentifying in the caption of the bank restraint the caption of the collection lawsuit CCAM, Scully, and DN made it more difficult for the least sophisticated consumer to challenge the bank restraint, which was issued on a sewer service judgment. For example, a consumer searching the court's ecourt's system for collection lawsuits filed by CCAM would not find the collection lawsuit filed by CCI. Even if the least sophisticated consumer did find the correct collection lawsuit in ecourt system, it would be more difficult for the least sophisticated consumer to explain in a *pro se* affidavit in support of an Order to Show Cause ("OSC") to vacate the sewer service default judgment why the court should enter an *ex parte* order to enjoin

CCI from continuing to collect when the bank restraint is in the name of CCAM.

22.     When Scully and DN signed the bank restraint they knew and intended that the financial institution served the bank restraint would, as required by law, forward a copy of the bank restraint on Mr. Tenenzapf, which it did.

23.     Mr. Tenenzapf never received, and on information and belief, CCI, CCAM, and DN never sent, prior to the execution of the July 9, 2015 bank restraint the notice required by the FDCPA, 15 U.S.C. 1692g (the "notice letter").  By failing to send the notice, CCI, CCAM, and DN made it more difficult to challenge the putative debt and the putative judgment. If CCI, CCAM, or DN sent the notice, Mr. Tenenzapf, if he sent a written dispute within 30 days of receipt of the g notice letter, would have required them to cease all collection activities until they verified the putative debt.

24.     Moreover, had CCI, CCAM, or DN provided the notice required, Mr. Tenenzapf may have been able to challenge the putative judgment by, for example, filing an Order to Show Cause to vacate the sewer service default judgment.  Indeed, this is an example of a key reason that Congress enacted the 1692g requirement: to provide consumers an efficient mechanism to challenge debts or judgments not legitimately owed.

25.     On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing the bank restraint.

26.     Had DN and Scully performed a meaningful attorney review, it would have, at a minimum checked to see whether DN, CCI or CCAM sent Mr. Tenenzapf a notice of assignment of the putative judgment from CCI to CCAM.

27.     Apparently, it is the pattern and practice of CCI and CCAM to collect on putative debts without first providing a notice of assignment of judgment.  Indeed, on August 10, 2009 CCAM

and DN were sued for attempting to obtain judgment in the name of CCAM when suit was filed in the name of CCI.  *See* Exh. D, complaint in *Del Villar v. Colorado Capital Investments, Inc. et al*, No. 1:09-cv-07049 (S.D.N.Y.).

28.     As part of the settlement in that suit, CCI and DN entered into an agreed eight point injunction to provide notices of assignment and to not initiate collection activities until that assignment is served, among other policy changes. *See* Exh. E, which is incorporated by reference in its entirety. CCI and DN have willfully violated the terms of the injunction in connection with their attempts to collect the putative debt from Mr. Tenenzampf.  Also, as CCI and DN collection of debts in violation of the injunction were prohibited, their threats to do so violated 15 U.S.C. § 1692e(5), threatening to take acts prohibited by law.  The blanket nature of the injunction and complete disregard of the terms of that injunction suggest Defendants' misconduct is consumer oriented.

29.     On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing the income execution. Had Scully and DN performed a meaningful attorney review, they would have, at a minimum 1) reviewed DN's own case file to verify they were not subject to any injunctions they had entered into; 2) reviewed DN's own case file to verify the notice of assignment of the account from CCI to CCAM; 3) verified the caption of the case matched the assignment.

30.      Attempting to collect by executing on a bank account or opposing an order to show cause, or any other act in an attempt to collect or in connection with an attempt to collect a debt without agreed injunction violates the FDCPA by, *inter alia*, threatening to take action prohibited by law in violation of under 15 USC 1692(e)(5).

31.     On or about July 30, 2015, Municipal Credit Union ("MCU"), the financial institution

where Mr. Tenenzapf banks, sent Mr. Tenenzapf a copy of the bank restraint along with a cover letter that, because of the bank restraint, the bank had removed a $75 processing fee. *See* Exh. E.

32.     Mr. Tenenzapf's receipt of the July 30, 2015 letter and enclosed bank restraint is the first time Mr. Tenenzapf knew, or could reasonably have known, about the collection lawsuit or the resulting sewer service judgment.

33.     MCU included with its July 30, 2015 cover letter, a copy of an income execution stating that Mr. Tenenzapf had a judgment of $13,692.57 against him and that his wages would be garnished at a rate of $100 a week until the judgment was satisfied.

34.     DN and Sitzer knew and intended that MCI would, as required by law, forward a copy of its income execution to Mr. Tenenzapf.  By signing the income execution and sending the income execution, DN and Sitzer represented to Mr. Tenenzapf that an attorney had done a meaningful attorney review of the facts and circumstances of his account.

35.     However, DN and Sitzer did not perform a meaningful attorney review prior to executing and sending the income execution. Any meaningful attorney review would have required DN and Sitzer to, at a minimum 1) reviewed DN's own case file to verify they were not subject to any injunctions they had entered into; 2) reviewed DN's own case file to verify the notice of assignment of the account from CCI to CCAM; 3) verified the caption of the case matched the assignment.

36.     DN has filed over 30,000 collection lawsuits in 2013 alone in just the 68 courts available on the New York "e-courts" system, https://iapps.courts.state.ny.us/webcivil/ecourtsMain, which further suggests it does not perform a meaningful attorney review of the documents it executes.

37.     Further the July 09, 2015 information subpoena the initial communication by DN, Sitzer, and CCI/CCAM with Mr. Tenenzapf.  However, said defendant's did not provide Mr. Tenenzapf

the statutorily required warnings and disclosure of rights pursuant to 15 U.S.C. § 1692g either in

that initial communication or within five days thereafter. Among these important rights is the

right of Mr. Tenenzapf to have said defendants cease collections until they verify the debt (if

they can) and provide Mr. Tenenzapf a copy of the putative judgment.

38.     On or about August 18, 2015 DN, on behalf of CCAM, sent Mr. Tenenzapf a collection

letter. *See* Exh. F.   In relevant part, the letter, issued under the DN letterhead, stated:

August 18, 2015

> Creditor: Citibank
> Original Account #: [REDACTED]
> Our Account#: 01-08287
> Current Balance:$30,257.32
>
> Dear Ira Tenenzapf:
>
> Please be advised that this office has been retained by Colorado Capital Asset
> Management Corp.. The above referenced account has been forwarded to our firm for
> collection. Please contact this office as we would like to arrange for payment.
>
> **VALIDATION NOTICE**
>
> UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION
> THEREOF WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE, THE ABOVE
> DEBT WILL BE ASSUMED TO BE VALID BY THIS OFFICE. SHOULD YOU
> NOTIFY THIS OFFICE IN WRITING AT THE ADDRESS SHOWN ABOVE WITHIN
> 30 DAYS AFTER RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY
> PORTION THEREOF IS DISPUTED, WE WILL OBTAIN AND MAIL TO YOU
> VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT, IF ANY, AND
> IF ALSO REQUESTED, THE NAME AND ADDRESS OF THE ORIGINAL
> CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

39.     CCAM and DN violated the FDCPA in a number of ways in sending this letter. To the

degree the default judgment was never assigned to CCAM but remained with CCI, CCI would be

liable for DN sending out a collection letter that violates the FDCPA.

40.     The collection letter violates 15 U.S.C. § 1692g in several ways.

41.     While the letter purports to contain the information required by 1692g, the information

was not sent in the initial written communication (the bank restraint) or within 5 days of the

9

initial written communication in violation of 1692g(a).   The collection letter identifies the creditor as "Citibank," but that was the putative original creditor in the collection lawsuit. Therefore, the collection letter misidentifies "the name of the creditor to whom the debt is owed" in violation of 1692g(a)(2).  While the collection letter states DN has been "retained by" CCAM, this is not a clear indication that CCAM is the "creditor to whom the debt is owed." It could be that CCAM is merely the servicer of the putative debt, a common situation in debt collection litigation.

42.     DN and CCI/CCAM also violated Mr. Tenenzapf's rights by continuing to attempt to collect on the sewer service judgment during the thirty days verification period in the August 18, 2016 collection letter.  By continuing to attempt to collect or take actions in connection with the collection of the debt during the thirty day period, DN and CCI/CCAM overshadowed the statutory rights under the belated 1692g notice that they provided in their August 18, 2016 letter, including the right to force the debt collectors to cease collections until they provide verification of the debt (if possible), and a copy of the sewer service judgment.

43.     On or about August 21, 2015, DN, on behalf of CCAM and under the name of attorney Scully, executed an income execution addressed to Mr. Tenenzapf, who received a copy of the document shortly thereafter. See Exh. G.

44.     On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing the income execution. Had Scully and DN performed a meaningful attorney review, they would have, at a minimum checked to see whether DN, CCI or CCAM sent Mr. Tenenzapf a notice of assignment of the putative judgment from CCI to CCAM.

45.     On or about August 26, 2015, at the request of CCAM and DN, New York City Marshal

10

Martin A. Bienstock issued and mailed to Mr. Tenenzapf a "Notice of Garnishment." *See* Exh. H.

46.    On or about September 1, 2015, Mr. Tenenzapf sent DN a dispute letter. However, despite their express representations to the contrary, CCAM and DN did not "obtain and mail to [Mr. Tenenzapf] verification of the debt or a copy of the judgment." Further, after receiving Mr. Tenenzapf's dispute letter, CCAM and DN did not "cease collection of the debt" until it verified the debt or judgment and mailed a copy of the same to Mr. Tenenzapf, in violation of 1692g(b). Indeed, CCAM and DN continued to seek to collect the debt, thereby overshadowing the 1692g "validation notice" language of the August 18, 2015 collection letter.

47.    On or about September 15, 2015, Mr. Tenenzapf filed an application for an order show cause.

48.    Finding merit to the argument Mr. Tenenzapf was never served, Civil Court Judge Harriet L. Thompson signed the OSC that same day, enjoined any further collection activity, and set a hearing on the demand to vacate the default judgment. *See* Exh. I.

49.    On September 16, 2015 Mr. Tenenzapf mailed a copy of the OSC to the Marshal Bienstock and DN.

50.    On or about October 7, 2015, DN, on behalf of CCAM and under the name of attorney Sitzer filed an Affirmation in Opposition, opposing the order to show cause stating CCI assigned the judgment against Mr. Tenenzapf to CCAM. See Exh. J

51.    On or about October 15, 2015, Mr. Tenenzapf filed a Supplemental Affidavit in Support of Order to Show Cause. Mr. Tenenzapf did not have the access to the affidavit of service when he filed the Order to Show Cause. The affidavit of service of the summons and complaint in the collections lawsuit averred service upon Ira Tenenzapf a "41 to 50 year old white male with

11

blonde hair known to the process server" at Plaintiff's address on December 15, 2001. Notwithstanding the contents of the affidavit of service in the collections lawsuit, Mr. Tenenzapf was never actually served with the collections lawsuit. Mr. Tenenzapf has never had blonde hair. No one matching the description given lived at his address when service was alleged.  See Exh. K

52.    Because Mr. Tenenzapf was never served, did not know he had been sued, and could not reasonably have known that he was sued, Mr. Tenenzapf did not answer the collections lawsuit.

53.    On November 19, 2015, Civil Court Judge Noah Dear issued a decision vacating the judgment on or about April 17, 2002, against Mr. Tenenzapf, holding that requiring a traverse hearing fourteen years later would be prejudicial for the plaintiff. Finding merit to Plaintiff's application, on November 19, 2015, Civil Court Judge Noah Dear, granted the application to vacate the sewer service judgment and restored the collection lawsuit to the trial calendar. *See* Exh. L.

54.    That should have been the end of the story, at least in regards to the judgment. But it was not. On or about December 16, 2015 DN, on behalf of CCAM and under the name of attorney Scully, issued a Restraining Notice and Information Subpoena to MCU on the vacated judgment. More fundamentally, of course, given that the judgment had been vacated a month earlier, CCAM had no legal right to execute a Restraining Notice and Information Subpoena.

55.    On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing the Restraining Notice and Information Subpoena. Had DN performed a meaningful attorney review, it would have, at a minimum, 1) reviewed DN's own case file to see if there was an order to show cause that was filed vacating the (sewer service) judgment; 2) reviewed the New York "ecourts" system which

shows that a motion to vacate judgment was filed and was granted and 3) reviewed DN's own case file to see if there was a notice of assignment from CCI to CCAM.

56.    On or about December 22, 2015 MCU), the financial institution where Mr. Tenenzapf banks, sent Mr. Tenenzapf a copy of the bank restraint along with a cover letter that, because of the bank restraint, the bank had removed a $75 processing fee. *See* Exh. M.

57.    The bank restraint also sought to collect $115 in court costs, which were not owed as the judgment had been vacated.

58.    On or about January 4, 2016 DN, on behalf of CCI and under the name of attorney Hong, sent Mr. Tenenzapf a set of Interrogatories. The Interrogatories state the case caption as "CACH, LLC v. Ira Tenenzapf." *See* Exh. N.

59.    One reasonable inference from the caption of the interrogatory demands is that the putative debt had been assigned from CCAM to CACH.  If true, then DN, CCAM, and CACH would be collecting on a debt without providing a notice of assignment as it was legally required to due under the terms of the agreed injunction in *Del Villar*.

60.    On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing issuing the Interrogatory demands. Had DN performed a meaningful attorney review, it would have, at a minimum, 1) reviewed DN's own case file to verify the correct caption of the case; 2) reviewed DN's own case file to verify the notice of assignment of the account from CCI to CCAM; and 3) reviewed its own documents to realize that it was under an agreed injunction in *Del Villar* not to collect on allegedly assigned debts without first providing a notice of assignment.

61.    DN served on Mr. Tenenzapf *forty eight* interrogatory demands. DN knew it had no ability to prevail in court on the merits of the claim, particularly given the age of the putative

debt and the multiple putative assignments.[3]   Therefore, the purpose of the forty eight interrogatories was not to actually obtain he information demanded but to attempt to overwhelm a pro se consumer into not answering the interrogatories within twenty days so DN can move for to strike the answer. Indeed, this is precisely what DN did in the *Del Villar* case. *See* Exh. D at ¶ 35.

62.   On or about January 16, 2016 Mr. Tenenzaph mailed DN his Responses to their Interrogatories. See Exh. O.

63.   On or about February 2, 2016, TD Bank ("TD"), the financial institution where Mr. Tenenzapf banks, sent Mr. Tenenzapf a Notice of Garnishment Order, along with a copy of the January 22, 2016 bank restraint from DN on behalf of CCAM and under the attorney name Scully because of the bank restraint, the bank had removed a $125 processing fee. *See* Exh. P.

64.   On information and belief, Scully and DN did not perform a meaningful attorney review of the particulars of Mr. Tenenzapf's account before signing the January 22, 2016 Restraining Notice and Information Subpoena. Had DN performed a meaningful attorney review, it would have, at a minimum, 1) reviewed DN's own case file to see if there was an order to show cause that was filed vacating the (sewer service) judgment; 2) reviewed the New York "ecourts" system which shows that a motion to vacate judgment was filed and was granted; 3) reviewed the file to determine what a notice of assignment was ever sent as required by law and by the agreed injunction in *Del Villar.*

---

3 The debt was for a putative credit card debt that was charged off some number of years before the filing of the 2001 collection lawsuit. In the debt buying industry, alleged credit card statements or cardmember agreements are not sold with the assignment of the putative debt. Instead, minimal, skeletal information is transferred via spreadsheet with little more than the name, address, social security number, name of putative original credit, and amount alleged to be due.  The assignment agreements typically have provisions precluding the assignee from being able to demand credit card statements or cardmember agreements, or limiting the ability to obtain that information for a certain number of accounts within a certain period of time. With the collection lawsuit filed fifteen years ago, DN had no ability to obtain credit card statements or cardmember agreements going back that far. The putative original creditors have policies of not retaining such documents, if at all, beyond just a few years.

65.     On or about February 2, 2016 TD restrained Mr. Tenenzapf's accounts in the total amount of $2,597.85; Restraining $988.85 from one account and $1,609.00 from a separate account. See Exhibit P.

66.     On or about February 2, 2016 Mr. Tenenzapf faxed DN a hand-written letter requesting the release of funds in his TD accounts. *See* Exh. Q.

67.     On or about February 3, 2016 DN, on behalf of CCAM and under attorney name Sitzer, sent TD a notice of Unconditional Release. See Exh. R.

68.     Thereafter TD Bank returned the previously seized funds back into Mr. Tenenzapf's account.

69.     On or about February 24, 2016 the Civil Court Judge Adam Silvera dismissed "Colorado Capital v. Ira Tenenzapf" with Prejudice. See Exh. S.  This is adjudication on the merits that Mr. Tenenzaph did not owe the putative debt.

70.     Defendants' actions inflicted damages on Plaintiff. Mr. Tenenzapf has been shocked and extremely distressed that the Defendants have continued to attempt to freeze and seize his money for a default judgment that he knew nothing about because of sewer service, and despite an order to cease collections, and after an order vacating judgment.

71.     Mr. Tenenzapf continues – even to this day -- to be afraid that Defendants will again attempt to freeze his bank account and seize his money.  There is an order discontinuing the case, so that is not supposed to be happening. Yet there was an order for Defendants to cease collections, and they sent a bank freeze to MCU.  Even after Mr. Tenenzapf won at the hearing on the order to show cause to vacate the sewer service default judgment, Defendants again attempted (and succeeded in) freezing his bank accounts and seizing thousands of dollars. He feels like "these pitbulls" will keep coming after him. He is scared and confused continually

asking himself "how can attorneys do this?"

72.      Mr. Tenenzapf is also concerned they will attempt to garnish his wages, as he previously received a letter from the Marshall regarding garnishment, and the order vacating the judgment has not succeeded in blocking DN from freezing his bank accounts.

73.      Mr. Tenenzapf experiences anxiety because of Defendants' actions. He cannot sleep, continuously thinking about what was going to happen next. This became especially bad as the days for hearings drew closer. When he does fall asleep, the sleep his sleep is not restful.  And he feels this tightness in his chest several times a month, apparently because of the stress and anxiety.

74.      Mr. Tenenzapf is afraid to keep money in his bank accounts over the statutory exemption.

75.      Mr. Tenenzapf was in the process of opening a retirement account but refrained from opening the account after this ordeal, as he is concerned DN will attempt to restrain that account as well.

### D.      COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

76.      Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

77.      The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair

16

consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

78.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general."  *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

79.     The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

80.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

81.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

82.     CCAM is a "debt collector" because it regularly purchases charged off consumer accounts after they are in default with the putative original creditor and attempts to collect on them by, directly or their debt collection agents, sending thousands of collection letters and filing thousands of collections lawsuits, and that is its principal purpose .

83.     DN is a law firm engaged in the business of collecting debts by filing thousands of

collection lawsuits on behalf of putative creditors or debt buyers; by making thousands of collection phone calls; and by sending out thousands of collection letters.

84.     DN has filed over 30,000 collection lawsuits in 2013 alone in just the 68 courts available on the New York "e-courts" system, https://iapps.courts.state.ny.us/webcivil/ecourtsMain.

85.     DN regularly collects consumer debts alleged to be due to another, and that is its primary purpose.

86.     DN is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

87.     CCI is a "debt collector" as defined by the FDCPA because it purchases or services thousands of alleged consumer debts after those debts are in default with the putative original creditor.

88.     CCAM is a "debt collector" as defined by the FDCPA because it purchases or services hundreds of alleged consumer debts after those debts are in default with the putative original creditor.

89.     CCI attempts to directly collect these debts by regularly making telephone calls and sending collection letters, such as those sent to Plaintiff, and that is CCI's primary purpose.

90.     CCAM attempts to directly collect these debts by regularly making telephone calls and sending collection letters, such as those sent to Plaintiff, and that is CCAM's primary purpose.

91.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

92.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e, and 1692f.  By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a

18

debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Asset also violated 15 U.S.C. § 1692g by i*nter alia*, not correctly stating the amount of the debt in its initial communication.

## E.   NEW YORK GENERAL BUSINESS LAW SECTION 349 ET SEQ.

93.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

94.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state…"

95.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

96.    As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of their businesses.

19

97.   Defendants committed the above described acts willfully and/or knowingly.

98.   Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

99.   As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

## F.   CONVERSION

100.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

101.   The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

102.   Property subject to conversion includes, *inter alia*, readily identifiable funds from a bank account.

103.   Defendants intentionally and without authority, assumed and exercised control over Plaintiff's wages and money, interfering with his right to possession of the same, *by inter alia*: a) issuing a restraint on his bank account and withdrawing funds pursuant to a judgment that was not valid, and was known not to be valid; c) directing a Marshal to seize the money from his bank and charge fees for levying despite the CCAM Defendants and DN having received notice that the judgment was vacated months earlier; and d) causing bank fees and charges to be incurred.

104.   Defendants' improper restraint of Plaintiff's money without qualification, which harmfully interfered with Plaintiff's rights to control his own property, constitutes conversion.

105.   For the reasons stated in the statement of facts, Defendants' conduct is gross, wanton or

deliberate and demonstrates a high degree of moral culpability. Further, said Defendants conduct as alleged in the statement of facts demonstrates malice, insult, and/or willful or reckless disregard of Plaintiff's rights, or other aggravated acts by said Defendants. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages.

## G.    JURY DEMAND.

106. Plaintiff demands a trial by jury.

## H.    PRAYER

107. WHEREFORE, Plaintiff requests the following relief:

a.    A declaration that all Defendants have committed the violations of law alleged in this action;

b.    An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

c.    Statutory damages under 15 U.S.C. § 1692k;

d.    An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and G.B.L. § 349;

e.    A judgment for actual, statutory, punitive, and exemplary damages;

f.    Prejudgment and post judgment interest as allowed by law;

g.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        June 21, 2016

Respectfully submitted,

/s/

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900

Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com